THE ESTATE OF LEEROY HICKMAN, JR.,   )
                                            )
               Plaintiff,            )
                                            )
v.                                      )     No.:  3:09-CV-69
                                            )            (VARLAN/SHIRLEY)
ROBERT BERKLEY, Individually and    )
in his Official Capacity,               )
LESLEY CRAIG, Individually and      )
in her Official Capacity,               )
MATTHEW GILMORE, Individually and  )
in his Official Capacity,               )
DOUG MOORE, Individually and       )
in his Official Capacity,               )
JOHN DOE 1, Individually and        )
in his Official Capacity, and          )
BLOUNT COUNTY, TENNESSEE,      )
                                            )
             Defendants.        )

## MEMORANDUM OPINION AND ORDER

This consolidated civil action[1] is before the Court on plaintiff's Motion to Amend the

Memorandum and Order Denying Plaintiff's Motion to Amend as to the "Gunowner Rights"

Section 1983 Claim [Doc. 33] and accompanying Memorandum in Support [Doc. 34].

Defendant Blount County, Tennessee ("Blount County") has filed a Response to Plaintiff's

Motion to Amend Memorandum and Order Denying Plaintiff's Motion to Amend as to the

---

[1]This Court consolidated cases 3:09-CV-69 and 3:09-CV-102 in its July 1, 2009
Memorandum and Order, finding the filings in each case to be identical to those filed in the other,
and made 3:09-CV-69 the lead case [*see* Doc. 32]. All references to filing numbers in this
memorandum are made to those in 3:09-CV-69.

"Gunowner Rights" Section 1983 Claim [Doc. 39]. The plaintiff has filed a Reply to Defendant's Response in Opposition to Plaintiff's Motion to Amend Memorandum and Order Denying Motion to Amend as to the "Gunowner Rights" Section 1983 Claim [Doc. 40]. This motion is now ripe for the Court's consideration.

## I.    Background[2]

Defendants Robert Berkley, Lesley Craig, Matthew Gilmore, Doug Moore, and John Doe I are allegedly deputy sheriffs for Blount County [Doc. 1, ¶¶ 6-9]. Blount County is alleged to be a "political subdivision of the State of Tennessee" [*Id.*, ¶ 11]. The decedent is LeeRoy Hickman, Jr. [*Id.*, ¶ 1]. Plaintiff's personal representative is alleged in the original complaint to be Janice Hickman, Mr. Hickman's wife [*Id.*, ¶¶ 4, 14].

On February 24, 2008, Mr. Hickman was allegedly sleeping alone in his home located in Blount County [*Id.*, ¶ 13]. Earlier, he had an altercation with Ms. Hickman, in which he was alleged to have been physically and verbally abusive [*Id.*, ¶ 14]. Uniformed Blount County officers responded to a domestic call at Mr. Hickman's home, and escorted Mr. Hickman's daughter and grandson from the premises while Mr. Hickman was present [*Id.*, ¶ 16]. Mr. Hickman was then allegedly left alone in his home [*Id.*].

A misdemeanor warrant was allegedly issued for Mr. Hickman's arrest [*Id.*, ¶ 25]. On the night of February 24, 2008, it is alleged that Officers Berkley, Craig, Gilmore, and Moore "devised a plan to arrest [Mr. Hickman] on [that] warrant by deceit, surprise and

---

[2]The facts in this section are drawn largely from the Court's discussion of the relevant facts in its July 1, 2009 memorandum and order [*see* Doc. 32].

threat of deadly force" [*Id.*]. It is alleged that John Doe I was in charge of supervising the activities of Officers Berkley, Craig, Gilmore, and Moore [*Id.*, ¶ 26]. Officers Berkley, Craig, Gilmore, and Moore allegedly came to Mr. Hickman's home, and entered onto the premises under cover of darkness and dressed in dark clothing, concealing their identities as law enforcement agents [*Id.*, ¶ 28]. Officer Craig, wearing civilian clothing, then allegedly knocked on Mr. Hickman's door, pretending to have trouble with a vehicle parked in the street in front of his home, and asked Mr. Hickman for assistance [*Id.*, ¶ 29]. Once Mr. Hickman was outside of his home, a series of commands was allegedly issued by the officers to Mr. Hickman, who then allegedly moved to retreat out of confusion and concern for his own safety [*Id.*, ¶¶ 31-33]. Mr. Hickman was then allegedly shot to death at close range with five bullets entering the back of his body [*Id.*, ¶ 33].

After Mr. Hickman's death, Ms. Hickman and Mr. Hickman's daughter were allegedly questioned for approximately two hours regarding his alleged wrongdoing [*Id.*, ¶ 35]. Following this detention, it is alleged that James Lee Berrong, the sheriff of Blount County, then informed them of Mr. Hickman's death, and requested permission to search the home [*Id.*, ¶ 36]. Sheriff Berrong allegedly took possession of the home, ordered officers or agents to collect all evidence from the scene, and had the Hazmat team wash away evidence of the location of Mr. Hickman's body when it was shot [*Id.*, ¶ 37].

Plaintiff subsequently filed suit, alleging violations of 42 U.S.C. §§ 1983 and 1988, as well as state law claims for assault and battery, wrongful death, violations of the Tennessee Constitution, violations of Tennessee's Governmental Tort Liability Act, and

3

violations of the common law duty of office [*see id.*, ¶¶ 39-75]. Plaintiff filed a Motion to Amend Complaint and Memorandum in Support Thereof on May 11, 2009 [Doc. 12]. By that motion, the plaintiff attempted to amend its original complaint to add a "Gunowner Rights" claim arising under 42 U.S.C. §§ 1983 and 1988, and under the Second, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution [*see* Doc. 12-1, ¶¶ 56-73]. This new claim alleged that Officers Berkley, Craig, Gilmore, Moore, and John Doe I, along with Sheriff Berrong, acted "in concert with one and another," "disarmed a private citizen who had a handgun permit," and "seized the weapons in his home in violation of his rights" [*Id.*, ¶ 58]. It further alleged that the decedent was targeted "because he was a member of the class of private citizens who exercise their Second Amendment Rights to keep and bear arms" [*Id.*, ¶ 62]. Citing well-settled Sixth Circuit precedent holding the Second Amendment inapplicable to the actions of state and local entities, this Court denied the plaintiff's motion to amend as to the gunowner rights claim in its July 1, 2009 memorandum and order [Doc. 32].

On July 8, 2009, the plaintiff filed a motion to amend the Court's memorandum and order denying the plaintiff's motion to amend as to the gunowner rights claim [Doc. 33] and an accompanying memorandum [Doc. 34]. Citing the recent Supreme Court decision in *Dist. of Columbia v. Heller*, 128 S. Ct. 2783 (2008), as well as a decision in the Ninth Circuit Court of Appeals, plaintiff seeks in this motion to add, pursuant to 28 U.S.C. § 1292(b), the following language to the Court's July 1, 2009 memorandum and order: "such order involves a controlling question of law as to which there is substantial ground for difference of opinion

4

and that an immediate appeal from the order may materially advance the ultimate termination of the litigation" [Doc. 33]. The plaintiff requests the addition of this language "for the sole purpose of allowing [the Estate] to file a Petition for Permission to Appeal to the Sixth Circuit" [*Id.*].

Blount County filed a response on July 20, 2009, arguing that:

(1)     *Heller* did not establish a "limitless Second Amendment individual right to bear arms";

(2)     Not all state and federal laws dealing with the possession of weapons were cast aside by the ruling in *Heller*;

(3)     The Supreme Court has held that the Second Amendment does not apply to the states, being only a limitation upon the federal government;

(4)     The issue of whether the Second Amendment applies to the states does not involve a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the order would not materially advance the ultimate termination of the litigation;

(5)     Recent cases from the Second Circuit, *e.g.*, *Maloney v. Cuomo*, 554 F.3d 56 (2d Cir. 2009), and the Seventh Circuit, *e.g.*, *Nat'l Rifle Assoc. of Am., Inc. v. City of Chicago*, 567 F.3d 856 (7th Cir. 2009)[3] have held that the Second Amendment does not apply to the states;

(6)     The plaintiff's "piece-meal" approach to this litigation runs contrary to Sixth Circuit precedent and to the purposes of 28 U.S.C. § 1292(b);

(7)     Assuming the plaintiff's motion is treated as a motion to reconsider under Federal Rule of Civil Procedure 59(e), the plaintiff cannot satisfy the requirements of that statutory provision; and

---

[3]*Nat'l Rifle Assoc. of Am., Inc.* is a companion case to *McDonald v. City of Chicago*, 174 L. Ed 2d 632 (2009). The Supreme Court has granted certiorari on *McDonald*, as discussed *infra* Part II.B. This Court refers to these two cases interchangeably.

5

(8)     Even if the plaintiff could raise a Second Amendment claim against Blount County, the claim set forth in its amended complaint does not satisfy the pleading requirements under Federal Rule of Civil Procedure 8(a).

[Doc. 39].  Defendants Berkley, Craig, Gilmore, and Moore, in their individual capacities, filed a Joinder in Response to Plaintiff's Motion to Amend Memorandum and Order on July 23, 2009, joining Blount County's response [Doc. 41].

Plaintiff filed a reply on July 22, 2009, contending that Blount County, in argument four of its response, attempts "to supplement the record and would have the Court consider documents, facts, and allegations outside the four corners of the original Amended Complaint" [Doc. 40].  Plaintiff argues that such consideration by this Court would run contrary to Federal Rule of Civil Procedure 12(b)(6) and to Local Rule 7.1(d) on Supplemental Briefs [*Id.*].

The Court has carefully considered the motion to amend, the response, the reply, and the accompanying memorandums.  For the reasons below, the motion to amend will be denied.

## II.    Analysis

28 U.S.C. § 1292(b) provides that the federal courts of appeals shall have jurisdiction of an appeal from an otherwise unappealable order in a civil action when the district judge states in writing in the order that "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the

6

litigation." *W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). Federal Rule of Appellate Procedure 5(a)(3) permits a district court to amend its orders to include this language sua sponte or upon motion by a party.

"Congress intended that section 1292(b) should be sparingly applied." *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974) (quoting *Milbert v. Bison Labs.*, 260 F.2d 431, 433 (3d Cir. 1958)). "It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation." *Cardwell*, 504 F.2d at 446 (quoting *Milbert*, 260 F.2d at 433). It "is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Cardwell*, 504 F.2d at 446 (quoting *Milbert*, 260 F.2d at 433).

The "controlling question of law" raised by the plaintiff is whether the Second Amendment applies against the actions of state and local entities. Using the framework set forth in *City of Memphis*, this Court considers below whether that question of law satisfies the requirements of 28 U.S.C. § 1292(b).

### A. Controlling Question of Law

The Court must first determine whether the question of law raised by the plaintiff is controlling. "'[A]ll that must be shown in order for a question to be "controlling" is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.'" *In re Baker & Getty Fin. Servs.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992) (quoting *In re Cement Antitrust Legislation*, 673 F.2d 1020, 1026 (9th Cir. 1982)).

The question of law raised by the plaintiff satisfies the first factor. Resolution of the Second Amendment issue in the plaintiff's favor on appeal could permit the plaintiff to raise a Second Amendment claim against state and local entities, including a claim alleging that the decedent was targeted by law enforcement because of his gun ownership.[4] It is possible that the outcome in the district court could thus be materially affected by whether the plaintiff is able to present that claim. The first factor is satisfied for this reason.

## B. Substantial Ground for Difference of Opinion

The Court must next determine whether there is a substantial ground for difference of opinion on the question of law raised by the plaintiff. Such a ground exists where the circuits are split on the issue. *See In re Baker & Getty Fin. Servs.*, 954 F.2d at 1172 (finding circuit split on issue to satisfy this factor). Other district courts in the Sixth Circuit have also found such a ground to exist where the issue is difficult and of first impression, or where a difference of opinion exists within the controlling circuit. *See Eagan v. CSX Transp., Inc.*, 294 F. Supp. 2d 911, 916 (E.D. Mich. 2003); *see also Gaylord Entm't Co. v. Gilmore Entm't Group, LLC*, 187 F. Supp. 2d 926, 956 (M.D. Tenn. 2002).

_____

[4]The Court notes that the plaintiff also argues that a favorable decision on appeal would permit the plaintiff to present facts related to the decedent's "lawful possession of a weapon for his self defense when multiple officers with concealed identify surprised him at night"; to the "officers' misinterpretation of their authority to shoot a fleeing misdemeanant merely because he was armed"; to the officers' "shooting a lawfully armed citizen in the back to disarm him"; to Blount County's "written policy authorizing shooting even without there being a threat of death or serious bodily injury to themselves or others"; and to the officers' "continued pursuit of decedent's weapons even after his death" [Doc. 34]. The Court is not persuaded that an unfavorable decision on appeal would prevent the plaintiff from presenting facts related to these issues. Nevertheless, the plaintiff can satisfy this factor on the basis of its "targeting" claim alone.

8

The question of law raised by the plaintiff also satisfies the second factor. As this Court noted in its July 1, 2009 memorandum and order, the plaintiff acknowledged that *Heller* did not reach the issue presented by the plaintiff [*see* Docs. 23, 32]. The Court treated that concession as an implicit acknowledgment that pre-*Heller* Sixth Circuit precedent was still valid [*see* Doc. 32]. This precedent holds that "the Due Process Clause of the Fourteenth Amendment does not incorporate the Second Amendment," and that the "Second Amendment operate[s] only upon the Federal Government." *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 539 n.18 (6th Cir. 1998). This precedent is based upon the Supreme Court's nearly 135-year-old holding that the Due Process Clause of the Fourteenth Amendment does not incorporate the Second Amendment against the states. *See United States v. Cruikshank*, 92 U.S. 542, 553 (1876) ("The second amendment declares that it shall not be infringed; but this, as has been seen, means no more than that it shall not be infringed by Congress. This is one of the amendments that has no other effect than to restrict the powers of the national government . . . ."); *see also Presser v. Ill.*, 116 U.S. 252, 265 (1886) (Second Amendment "is a limitation only upon the power of Congress and the National government, and not upon that of the States."); *Miller v. Tex.*, 153 U.S. 535, 538 (1894) ("[I]t is well settled that the restrictions of [the Second Amendment] operate only upon the Federal power, and have no reference whatever to proceedings in state courts."). *Heller* explicitly left these rulings undisturbed. *See Heller*, 128 S. Ct. at 2813 n.23 (noting that the incorporation question was not presented by the case, and citing *Presser*, 116 U.S. at 265, and *Miller*, 153 U.S. at 538 as reaffirming "that the Second Amendment applies only to the

9

Federal Government"). Cognizant of this precedent, this Court applied the well-settled case law of *Peoples Rights*, and did not permit the plaintiff to amend its complaint to include a Second Amendment claim against state and local actors.

Plaintiff has offered evidence, however, that the circuits are now split as to whether the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment against the states. *Compare Nordyke v. King*, 563 F.3d 439, 457 (9th Cir. 2009) ("We are . . . persuaded [by the history and traditions of the Republic] that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment and applies it against the states and local governments") *with Maloney v. Cuomo*, 554 F.3d 56, 58 (2d Cir. 2009) (per curiam) ("It is settled law . . . that the Second Amendment applies only to limitations the federal government seeks to impose on this right."). The Ninth Circuit granted a rehearing en banc of the *Nordyke* panel decision on July 29, 2009. *Nordyke v. King*, 575 F.3d 890, 891 (9th Cir. 2009). In the order granting the rehearing, Chief Judge Kozinski noted that "[t]he three-judge panel opinion [cited by the Estate] shall not be cited as precedent by or to any court of the Ninth Circuit." *Id.* After the rehearing, which was held on September 24, 2009, *see* Oral Argument, 2009 WL 3234425 (9th Cir. Sept. 24, 2009), the Ninth Circuit issued another order vacating the submission pending the Supreme Court's disposition of several cases considering the same issue, including *Maloney* and *Nat'l Rifle Assoc. of Am., Inc.* Order, *Nordyke v. King*, No. 07-15763 (9th Cir. Sept. 24, 2009).

On September 30, 2009, the Supreme Court granted certiorari in *McDonald* on the following question: "Whether the Second Amendment right to keep and bear arms is

incorporated as against the States by the Fourteenth Amendment's Privileges or Immunities or Due Process Clauses." *McDonald*, No. 08-1521, Cert. Granted Sept. 30, 2009, http://supremecourtus.gov/qp/08-01521qp.pdf. The fact that the Supreme Court has seen fit to grant certiorari on the precise question of law raised by the plaintiff demonstrates a substantial ground for difference of opinion on that question. The second factor is satisfied for this reason.

### C. Advancement of the Ultimate Termination of the Litigation

Lastly, the Court must determine whether an immediate appeal from the order may materially advance the ultimate termination of the litigation. "When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *City of Memphis*, 293 F.3d at 351 (quoting *White v. Nix*, 43 F.3d 374, 378-79 (8th Cir. 1994)). Critically, § 1292(b) "was not intended to authorize interlocutory appeals in ordinary suits for personal injuries or wrongful death that can be tried and disposed of on their merits in a few days." *Cardwell*, 504 F.2d at 446.

This action is not in the class of "exceptional" cases for which § 1292(b) provides interlocutory relief. *See Cardwell*, 504 F.2d at 446 (quoting *Milbert*, 260 F.2d at 433). Plaintiff has raised a panoply of claims against the defendants, including claims under 42 U.S.C. §§ 1983 and 1988, that cover substantially the same territory as that covered by its proposed "gunowner rights" claim. Thus, litigation in the case would be conducted in

substantially the same manner regardless of the outcome of the plaintiff's Second Amendment claim on appeal.

Like *Caldwell*, this is a wrongful death case that can be tried and disposed of on its merits at a trial. Rather than avoiding "protracted and expensive litigation," an interlocutory appeal here is more likely to produce the sort of "piecemeal litigation" that § 1292(b) reserves only for exceptional cases. *Kraus v. Bd. of County Comm'rs*, 364 F.2d 919, 922 (6th Cir. 1966). For all of these reasons, the third factor is not satisfied in this case.

This Court is required to construe § 1292(b) strictly. *See Wagner v. Burlington Indus., Inc.* 423 F.2d 1319, 1322 n.5 (6th Cir. 1970) ("28 U.S.C. § 1292(b) is to be strictly construed and contemplates only the extraordinary type of case."). Plaintiff has not demonstrated that the question of whether the Second Amendment applies against the actions of state and local entities in this case satisfies the strict requirements of § 1292(b). Accordingly, plaintiff's motion to amend will be denied.

## III.    Conclusion

The plaintiff's Motion to Amend the Memorandum and Order Denying Plaintiff's Motion to Amend as to the "Gunowner Rights" Section 1983 Claim is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE